IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MARILYN K. SHUMATE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 11-0078-CG-M |
| | ) | |
| SELMA CITY BOARD OF | ) | |
| EDUCATION and JOE J. | ) | |
| PETERSON, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the court on the motion for summary judgment (Doc. 40) and supplemental motion for summary judgment (Doc. 57) filed by the defendants, the Selma City Board of Education (the "Board") and Joe J. Peterson ("Peterson") (collectively, the "defendants"). The parties have filed briefs and evidentiary materials in support of their respective positions, and the motion is now ripe for resolution. After careful consideration, the court concludes that the defendants' summary judgment motions are due to be **GRANTED IN PART** and **DENIED IN PART**.

## I.    FACTUAL BACKGROUND

The plaintiff, Marilyn Shumate ("Shumate"), is a Caucasian woman over 40 years of age who has worked for the Board as an elementary school cafeteria cook since 2003, and is still employed by the Board. (Doc. 75 at 3-4). She has completed one year of college and has worked at various Selma

schools during her tenure.  Doc. 66-1 at 3; Doc. 75 at 3-4.  Occasionally throughout her career, Shumate would "fill in" for an absent cafeteria manager.  Id. at 4.

In 2009, while Shumate was working in the cafeteria at Edgewood Elementary ("Edgewood"), the manager position there became available upon the retirement of the previous manager, and Shumate applied for the vacancy.  Id. at 5.  The posted minimum requirements for the job were a high school diploma or GED and three years of school food service or related work. Id.  The Board convened a three-member panel to interview candidates and select one to be the new manager.  Id.  The members of the 2009 Edgewood panel included Edgewood's principal, defendant Peterson; the Board's Child Nutrition Program ("CNP") Director, Smyley Kirkpatrick ("Kirkpatrick"); and Raymond Matthews, Jr., ("Matthews").  Id.  After interviewing all the applicants, the panel hired Wanda Smith, stating that she "was the most effective candidate for the position."  (Doc. 66-10 at 9).  Smith, who is African-American, is approximately 16 years younger than Shumate and has no college education, but otherwise met the job requirements of holding a high school diploma and having at least three years' experience in school food service or related work.  (Doc. 75 at 6).

After Smith was hired for the Edgewood position, Shumate filed three successive EEOC charges in October 2009, March 2010, and April 2010.  See Doc. 41-14 at 2-9.  In her charges, Shumate alleged that "an individual"

approached her after she submitted her application and informed her that "it had already been decided" that Smith would be selected for the manager position rather than Shumate. Id. at 5.  Shumate further alleged that she had been discriminated against on account of her race and age, and that she was better qualified than Smith. Id. at 6.  Shumate's latter two EEOC charges indicate that she alleged retaliation by the Board (insofar as the box marked "retaliation" is checked); however, Shumate's attached statements only mentioned her claims of discrimination. Id. at 4-9.  On October 8, 2010, the EEOC issued its "Dismissal and Notice of Rights," also known as a "right to sue letter," in which it stated that it was "unable to conclude that the information obtained establishes violations of the [discrimination] statutes." Doc. 1-4 at 2.  Subsequently, in January 2011, Shumate filed the instant lawsuit. See Doc. 1.

In 2011, as her lawsuit over the Edgewood position was pending, the Board posted job announcements for three more cafeteria manager positions at Kingston Elementary School ("Kingston"), Clark Elementary School ("Clark") and the School of Discovery. Doc. 51 at 6; Doc. 41-2 at 39.  Shumate applied for the Kingston position and was offered an interview. See Doc. 75 at 7.  Shumate did not apply for the Clark or School of Discovery positions, and claims that she was not aware of either of them despite the fact that her own second amended complaint states that "three positions for CNP manager were posted at the same time." Doc. 51 at 6; Doc. 75 at 12.  Nevertheless, the

2011 interview panel considered Shumate for the latter two positions
anyway, based upon the fact that she applied and interviewed for the
Kingston position.  Id.

Shumate was not hired for any of the three vacancies.  (Doc. 75 at 8).
The three successful candidates were Sharon Dower (Kingston), Michael
Steele (Clark), and Cynthia Burnette (School of Discovery).  Id.  Steele and
Dower are African-American; Burnette is Caucasian.  Doc. 41-10 at 4; Doc. 59
at 16; Doc. 41-15 at 4.  All three successful candidates are at least nine years
younger than Shumate.  (Doc. 75 at 8).

After Dower, Steele, and Burnette were hired, Shumate filed a fourth
EEOC complaint on September 26, 2011, alleging race and age
discrimination with regard to the Kingston position, and alleging retaliation
for her prior EEOC charges and the instant lawsuit.  (Doc. 41-14 at 10-12).
Shumate received a right to sue letter from the EEOC on January 25, 2012.
(Doc. 35 at 1).  Later, during the discovery phase of litigation in May or June
2012, Shumate learned of that the 2011 interview panel considered her for
the School of Discovery and Clark positions even though she did not apply for
them.  (Doc. 75 at 12).  Shumate subsequently amended her complaint in
August 2012 to add the two jobs to her various claims.  (Doc. 51).

## II.   SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment
shall be granted "if the movant shows that there is no genuine dispute as to

any material fact and that the movant is entitled to judgment as a matter of law."  The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'"  Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  See Anderson, 477 U.S. at 251-252.  The moving party bears the burden of proving that no genuine issue of material fact exists.  O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor.  Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).  "If reasonable minds might differ on the inferences arising from undisputed facts, then a court should deny

summary judgment." <u>Hinesville Bank v. Pony Exp. Courier Corp.</u>, 868 F.2d 1532, 1535 (11th Cir. 1989) (citing <u>Mercantile Bank & Trust v. Fidelity & Deposit Co.</u>, 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(a), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." <u>Howard v. BP Oil Co.</u>, 32 F.3d 520, 524 (11th Cir. 1994)(citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." <u>Clark v. Coats & Clark</u>, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response .... must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial." <u>Vega v. Invsco Group, Ltd.</u>, 2011 WL 2533755, *2 (11th Cir. 2011). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." <u>Tipton v. Bergrohr GMBH-Siegen</u>, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine

issue for trial." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,</u> 475 U.S. 574, 587 (1986) (internal quotation and citation omitted).

## III.   ALLEGED FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES (RETALIATION CLAIM)

Shumate filed four EEOC charges and the instant lawsuit after her unsuccessful applications for the cafeteria manager position at Edgewood Elementary in 2009 and the cafeteria manager position at Kingston Elementary in 2011. <u>See</u> Doc. 1; Doc. 41-14. Neither the EEOC charges nor the initial complaint referred to two additional cafeteria manager positions at the School of Discovery and Clark Elementary, both of which also arose in 2011. <u>Id.</u> In fact, Shumate alleges that she was not aware of these latter two positions until the discovery phase of this litigation, sometime in May or June 2012. (Doc. 75 at 12). After learning that the Board considered her for the School of Discovery and Clark positions even though she did not apply for them, Shumate amended her complaint in August 2012 to add the two jobs to her various claims. (Doc. 51).

The defendants argue that Shumate failed to exhaust her administrative remedies with regard to the School of Discovery or Clark because her EEOC charges did not include either of these positions. Therefore, they argue, the court has no jurisdiction to hear her claims as they pertain to the School of Discovery or Clark. (Doc. 59 at 7-8). Shumate, not surprisingly, disputes this, arguing that "a plaintiff does not have to exhaust administrative remedies for retaliation claims where there is an earlier

7

EEOC charge." (Doc. 75 at 12). Shumate points to the four EEOC charges she filed in October 2009, March 2010, April 2010, and September 2011, respectively, as proof that she "filed <u>several</u> prior EEOC charges." <u>Id.</u> at 13 (emphasis in original).

Before bringing a Title VII action in federal court, a plaintiff must exhaust her administrative remedies with the EEOC. <u>See</u> <u>Sanchez v. Standard Brands, Inc.</u>, 431 F.2d 455, 460 (5th Cir. 1970). This is done by filing a charge with the EEOC and then obtaining a right to sue letter. <u>Id.</u>; 42 U.S.C. § 2000e–5(f)(1). A charge not made within 300 days of the event becomes time barred. 42 U.S.C. § 2000e–5(e)(1). The scope of the judicial complaint is limited to the allegations made in the charge of discrimination and claims that "can reasonably be expected to grow out of the charge of discrimination." <u>Gregory v. Ga. Dept. of Human Res.</u>, 355 F.3d 1277, 1280 (11th Cir. 2004) (internal quotation marks and citations omitted). A claim can be reasonably expected to grow out of the discrimination charge if it is "like or related to, or grew out of, the allegations contained in her EEOC charge." <u>Id.</u> The Eleventh Circuit "has noted that judicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint, but has cautioned that allegations of new acts of discrimination are inappropriate." <u>Id.</u> at 1279–80 (quoting <u>Wu v. Thomas</u>, 863 F.2d 1543, 1547 (11th Cir. 1989)). "The purpose of this exhaustion requirement 'is that the [EEOC] should have the first opportunity to investigate the alleged

discriminatory practices to permit it to perform its role in obtaining

voluntary compliance and promoting conciliation efforts.' " Gregory v. Georgia

Dept. of Human Resources, 355 F.3d 1277, 1279 (11th Cir. 2004) (quoting

Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 929 (11th Cir. 1983)).

Shumate alleges that the 2011 interview panel which considered her

for the Kingston position also considered her for the School of Discovery and

Clark positions, despite her not applying for the latter two jobs.  (Doc. 75 at

12, n.1).  Shumate also alleges that the 2011 interview panel retaliated

against her as it simultaneously considered her for all three positions.  Id.

Thus, the court finds that Shumate's retaliation claim regarding the School of

Discovery and Clark positions can be said to "grow out" of her EEOC charge

regarding the Kingston position.  Therefore, Shumate has exhausted her

administrative remedies and need not have filed a separate EEOC charge.

Accordingly, the court has jurisdiction to consider her claims regarding Clark

and School of Discovery positions.

## III.   § 1981 RETALIATION CLAIMS

### A.    Statement of the Law

A retaliation claim based on circumstantial evidence is analyzed

according to the McDonnell Douglas framework.  See McDonnell Douglas

Corp. v. Green, 411 U.S. 792, 802-04 (1973); Farley v. Nationwide Mut. Ins.

Co., 197 F.3d 1322, 1336 (11th Cir. 1999) (applying McDonnell Douglas-type

analysis to retaliation claims).  The plaintiff bears the initial burden of

establishing a <u>prima</u> <u>facie</u> case of retaliation, which she may do by demonstrating that (1) she engaged in statutorily-protected activity; (2) she suffered a materially adverse employment action; and (3) there was some causal relation between these two events.  <u>Dixon v. The Hallmark Companies, Inc.</u>, 627 F.3d 849 (11th Cir. 2010).  The Eleventh Circuit construes the "causal link" element broadly, so as "to require merely that the plaintiff establish that the protected activity and the adverse action were not wholly unrelated."  <u>Goldsmith v. Bagby Elevator Co., Inc.</u> 513 F.3d 1261, 1286 (11th Cir. 2008) (quoting <u>Simmons v. Camden County Bd. of Educ.</u>, 757 F.2d 1187, 1189 (11th Cir. 1985)).

Once a plaintiff has established the <u>prima</u> <u>facie</u> elements of the claim, the defendant has an opportunity to articulate a legitimate, nonretaliatory reason for the challenged employment action as an affirmative defense to liability.  <u>Smith v. Lockheed-Martin Corporation</u>, 2011 WL 2567777, *2 (11th Cir. 2011).  The plaintiff must then prove by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited retaliatory conduct. <u>Id.</u>

### B.    **<u>Prima</u> <u>Facie</u> Case**

#### 1.) **School of Discovery and Clark Elementary**

Shumate cannot establish a <u>prima</u> <u>facie</u> claim of §1981 retaliation with regard to the School of Discovery and Clark positions because there is no retaliatory animus in the record.  By Shumate's own admission, she did not

apply for these two positions.  (Doc. 75 at 12).  Nevertheless, the interview panel considered Shumate anyway, based upon the fact that she applied and interviewed for the manager position at Kingston.  Id.  Retaliation under these circumstances makes no sense -- if the Board intended to retaliate against Shumate for her prior EEOC charges, then why would they set aside her failure to apply and consider her for the two positions anyway?  The court therefore holds as a matter of law that no reasonable jury could find these facts to constitute an act of retaliation with regard to the Clark or the School of Discovery positions.

Shumate attempts to explain away her failure to apply for the positions by offering up an unconvincing blend of hearsay and personal opinion in which she accuses the Board of concealing the Clark and School of Discovery jobs from her while secretly encouraging others to apply.  Id. at n.1.  But this theory does not explain the interview panel's decision to consider Shumate notwithstanding her failure to apply, which would have frustrated the purpose of concealing the two positions.  Furthermore, the evidence Shumate cites simply does not support this allegation, nor does it support Shumate's characterization of Kirkpatrick as "quietly" moving against her.  See id.  For example, Shumate points to the testimony of Cynthia Burnett, the successful School of Discovery applicant; however, the cited portion of Burnett's testimony simply establishes that Burnett "ha[d] no idea" whether or not Kirkpatrick asked anybody else to apply for the position.  Doc. 64-5 at

5.  Shumate also cites a hearsay-laden paragraph from Janice Roseberry's affidavit in which Roseberry asserts that Kirkpatrick was "pushing" for Sharon Dower to get the Kingston position.  Doc. 64-2, ¶ 7.  However, the cited paragraph deals exclusively with Kingston Elementary and says nothing about the School of Discovery or Clark Elementary.  See id.  Shumate also cites her own deposition testimony to assert that "I was not told that there were two other positions open," Doc. 41-1 at 18, yet this is not probative of a scheme to keep Shumate in the dark about the two vacancies.

Finally, Shumate also asserts that the Board "is a small gossipy place" where people learned and talked about Shumate's lawsuit, and claims that one (unidentified) employee "was out telling about [her] lawsuit" and told people that Shumate was crazy.  (Doc. 75 at 44).  The defendants correctly point out that this is inadmissible hearsay and irrelevant to the question of whether the members of the interview panel harbored retaliatory animus.  Doc. 84 at 3 (citing Jackson v. Sara Lee Bakery Co., 677 F.Supp.2d 1268 (N.D. Ala. 2009)).

Far more pertinent is the evidence cited by the defendants.  First, Kirkpatrick testified that all three 2011 vacancies were properly posted.  (Doc. 41-2 at 39).  Secondly, at her deposition, Shumate could not recall whether she knew of any evidence the Board hired a cafeteria manager without the job being properly posted.  (Doc. 41-1 at 59).  Most conclusively of all, when asked on cross examination, "do you maintain that any job postings

were purposefully held from you or hidden from you?" Shumate answered, "I
don't know." Id. at 60.

Accordingly, since the court finds that there was no unlawful
retaliatory animus regarding the Board's hiring decisions at the School of
Discovery and Clark, the defendants' motion for summary judgment is due to
be **GRANTED** as to Shumate's Title VII and § 1981 retaliation claim (Counts
Two and Seven) with regard to the Clark and School of Discovery positions.

### 2.)   Edgewood Elementary

To the extent that Shumate intended to claim Title VII and § 1981
retaliation arising out of the 2009 Edgewood Elementary cafeteria manager
position[1], she has not established the first element of a prima facie case
because she has failed to identify any protected expression in which she
engaged prior to the alleged adverse employment action.  Moreover, Shumate
did not discuss her claim of retaliation with regard to the Edgewood position
in her opposition to summary judgment.  See Doc. 75.  "[G]rounds alleged in
the complaint but not relied upon in summary judgment are deemed
abandoned."  Shamburger v. City of Mobile, 2008 WL 2874363 at *1 (S.D.
Ala. 2008) (citing Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 592
(11th Cir. 1995)).  Given Shumate's lack of argument on this point, the court

---

[1] Count Two of Shumate's complaint states a claim both for Title VII and §
1981 retaliation and discrimination, and includes an allegation that she was
denied promotions and positions that were awarded to Wanda Smith, among
others.  (Doc. 51 at 8).  Count Seven of Shumate's complaint states a claim for
Title VII and § 1981 retaliation generally, but cites only her January 2011
lawsuit as evidence of protected expression.  (Doc. 51 at 14).

finds that even if she had identified the requisite protected expression, she has abandoned any retaliation claim with respect to the Edgewood position.

Accordingly, summary judgment is due to be **GRANTED** with regard to Shumate's retaliation claim (Counts Two and Seven) as it pertains to the 2009 Edgewood position.

### 3.)  Kingston Elementary

Shumate does state a <u>prima</u> <u>facie</u> retaliation claim with regard to the Kingston Elementary position.  She has satisfied the first two elements by virtue of her protected expression (the January 2011 lawsuit and prior EEOC charges) and adverse employment action (not being hired for the Kingston position). As for the causal connection element, Shumate points to the testimony of 2011 interview panel member Aubrey Larkin as evidence that the panel was made aware of her lawsuit at the outset of the panel's discussion about who to hire:

> Q: [W]ere you aware that Ms. Shumate had filed an EEOC charge and/or lawsuit against the board?
>
> A: Yes, ma'am, that did come up in the interview – I mean in the discussion.
>
> Q: Do you recall what came up concerning that?
>
> A: I remember Ms. Kirkpatrick just stating that, so we could be aware of it ..."

(Doc. 41-9 at 11).  This testimony satisfies the third element of a retaliation claim because a plaintiff satisfies the causal element if she

14

provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action. Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999). Here, Larkin's testimony constitutes evidence that the members of the interview panel became aware of her protected expression within minutes of the adverse employment action. See Doc. 41-9 at 11. The court notes that the four other members of the interview panel testified that they were unaware of Shumate's lawsuit, or gave inconclusive testimony on this question. See Doc. 64-8 at 33 (Kirkpatrick's testimony that she "ha[d] no earthly idea" at what point she found out that Shumate filed a lawsuit against the Selma City Board of Education); see also Doc. 41-8 at 17; Doc. 41-7 at 19; Doc. 41-6 at 9. However, it is not for the court to decide at the summary judgment stage which of these five witnesses is the most credible; rather, that issue is left for a jury. Lane v. Celotex Corp., 782 F.2d 1526, 1528 (11th Cir.1986) ("The district court must not resolve factual disputes by weighing conflicting evidence ...").

The defendants attempt to neutralize Larkin's testimony by asserting that Shumate's lawsuit was not mentioned during the "interview process." (Doc. 84 at 3). Even if this statement were supported by the record (which it is not), it is a distinction without a difference. Larkin testified that the lawsuit was raised during the panel's "discussion." (Doc. 41-9 at 11). Although he did not precisely define the term "discussion" as opposed to

"interview," the defendants cite no evidence that the panel's discussion fell outside of the greater hiring process, and no evidence that the hiring decision took place before the revelation of the lawsuit, as they appear to claim in their reply brief. (Doc. 84 at 3). In the absence of record evidence to the contrary, the court must resolve this issue in Shumate's favor and finds that the interview panel's discussion was part of the general interview process.[2]

## C.    Legitimate, Non-Discriminatory Reasons

With Shumate having established a prima facie case of retaliation, the court now turns to the Board's legitimate, non-discriminatory reasons for the adverse employment decision.

In general, the employer has an "exceedingly light" burden in this regard. Perryman v. Johnson Products Co., 698 F.2d 1138, 1142 (11th Cir.1983). Here, the Board contends that Shumate was not selected for the Kingston position because she scored lower in her interview than the successful candidate, Sharon Dower. (Doc. 42 at 11) (citing Doc. 41-11 at 5 and Doc. 41-2 at 33). The Board's second, related proffered reason is that Dower was more qualified than Shumate because she had acted as the substitute cafeteria manager at another school, knew how to run the

---

[2] Also, the court notes for completeness' sake that the defendant's statement that "[Shumate's] last EEOC charge does not specifically state the 2011 promotion was not awarded due to retaliation," is demonstrably false. (Doc. 42 at 14). In her September 16, 2011, EEOC charge, Shumate stated that "I believe I am being retaliated against for filing my previous EEOC charge and lawsuit which was filed in January 2011." (Doc. 41-14 at 12).

computerized cash register, and was familiar with the other responsibilities of the job. (Doc. 42 at 10) (<u>citing</u> Doc. 41-2 at 33). The Board's third proffered reason for not hiring Shumate for the Kingston position is that Shumate did not perform well in her interview, providing "pretty fair" answers to questions about her qualifications and willingness to implement needed changes, and repeatedly stating that it was her "time." <u>Id.</u> at 11 (<u>citing</u> Doc. 64-7 at 7 and Doc. 41-11 at 6). Finally, the Board's fourth proffered reason for not hiring Shumate as the Kingston cafeteria manager was her personality. The Board claims that Shumate "ha[d] a history of having problems getting along with others often causing commotions [sic] and confusion." (Doc. 41-11 at 5). Kirkpatrick testified that, on occasion, she had to intervene and resolve problems created by Shumate. <u>Id.</u>; <u>see also</u> Doc. 41-2 at 51-53.

These reasons are perfectly legitimate and non-discriminatory. Therefore, any presumption of discrimination is rebutted, and thus disappears. <u>Smith v. Lockheed-Martin Corporation</u>, 644 F.3d at 1325-26. The inquiry now proceeds to a "new level of specificity," whereby Shumate must prove by a preponderance of evidence that the defendant's reason is a mere pretext for unlawful discrimination or retaliation. <u>Id.</u> at 1326. (citations omitted).

### D.    Pretext

A plaintiff may demonstrate that an employer's reason is pretextual by identifying "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could find them unworthy of credence." Ritchie v. Industrial Steel, Inc., 426 Fed. Appx. 867, 872 (11th Cir. 2011) (citing Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997). Rather than "simply quarreling with the wisdom of [the employer's] reason," the plaintiff "must meet that reason head on and rebut it." Ritchie, 426 Fed. Appx. at 872 (quotation omitted). Furthermore, "[t]he inquiry into pretext centers on the employer's beliefs, not the employee's beliefs." Alvarez v. Royal Atlantic Developers, Inc., 610 F.3d 1253, 1266 (11th Cir. 2010).

Shumate argues that "the evidence plainly shows that the 2011 decision makers were aware of Shumate's EEOC charges and lawsuit at the very time they were making their decision as to whom to promote." (Doc. 75 at 16). She points to the deposition testimony of interview panel member Larkin, supra, who stated that Kirkpatrick told the panel about Shumate's EEOC charges and lawsuit "so that we could be aware of it." See Doc. 41-9 at 11. Evidence that Kirkpatrick purposefully raised the issue of Shumate's lawsuit and/or her EEOC charges to the interview panel as it was holding its discussions clearly rebuts the legitimate, non-retaliatory reasons proffered by the Board, because it suggests that the interview panel unlawfully considered

and/or discussed protected activity when deciding whom to hire for the Kingston cafeteria manager vacancy.  As stated, <u>supra</u>, the Board's argument that Shumate's lawsuit was not mentioned during the "interview process," <u>see</u> Doc. 84 at 3, is a distinction without a difference because Larkin testified that the lawsuit was raised during the panel's "discussion."  (Doc. 41-9 at 11).

Accordingly, the defendants' motion for summary judgment is **DENIED** as to Shumate's Title VII retaliation claim (Counts Two and Seven) with regard to the Kingston position only.

## IV.   DISCRIMINATION CLAIMS

### A.   Statement of the Law

Title VII prohibits an employer from discriminating against a person based on race.  42 U.S.C. §2000e-2(a)(1).  Likewise, 42 U.S.C. §1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts.  See, e.g., <u>Johnson v. Railway Express Agency</u>, 421 U.S. 454 (1975) (holding unequivocally that §1981 protects against racial discrimination in private employment).  Section 1981 liability must be founded on purposeful discrimination.  See <u>General Building Contractors Association v. Pennsylvania</u>, 458 U.S. 375, 389 (1982); <u>Lincoln v. Board of Regents of the University System of Georgia</u>, 697 F.2d 928, 935 n. 6 (11th Cir. 1983).  Thus, a showing of disparate impact through a neutral practice is insufficient to prove a §1981 violation because proof of discriminatory intent is essential.  <u>See</u> <u>id.</u> at 388. (recognizing that the

drafters of §1981 were not concerned with practices that were facially

neutral).  Accordingly, only direct or circumstantial modes of proving

intentional discrimination are available to the §1981 plaintiff. See Larkin v.

Pullman-Standard Div., Pullman, Inc., 854 F.2d 1549, 1561 (11th Cir. 1988),

overruled on other grounds by Swint v. Pullman-Standard, Inc., 493 U.S. 929

(1989).

The test for intentional discrimination in suits under §1981 is the

same as that used in Title VII discriminatory treatment cases.  Ferrill v.

Parker Group, 168 F.3d 468 (11th Cir. 1999).  The plaintiff has the burden of

establishing a prima facie case of employment discrimination by a

preponderance of the evidence.  McDonnell Douglas Corp. v. Green, 411 U.S.

792 (1973).  This prima facie case can be established in any one of three ways:

(1) by presenting direct evidence of discriminatory intent; (2) by presenting

circumstantial evidence of discriminatory intent through the McDonnell

Douglas test; or (3) by demonstrating through statistics a pattern of

discrimination.  Earley v. Champion International Corp., 907 F.2d 1077, 1081

(11th Cir. 1990).

The standards that apply to Title VII claims also apply to cases arising

under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621,

et. seq.  See, e.g., Oscar Mayer & Co. v. Evans, 441 U.S. 750, 756 (1979);

Rebar v. Marsh, 959 F.2d 216 (11th Cir. 1992); Baker v. Sears, Roebuck &

Co., 903 F.2d 1515, 1519 (11th Cir. 1990); Anderson v. Savage Laboratories,

Inc., 675 F.2d 1221, 1224-25 (11th Cir. 1982).  Under the ADEA, it is

"unlawful for an employer to fail or refuse to hire or to discharge any

individual or otherwise discriminate against any individual with respect to

his compensation, terms, conditions, or privileges of employment, because of

such individual's age."  Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th

Cir. 2000) (citing 29 U.S.C. § 623(a)(1)).

Like in Title VII contexts, where the plaintiff wishes to prove a claim

of race or age discrimination through circumstantial rather than direct

evidence, the court evaluates the claims using the burden-shifting framework

established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411

U.S. 792 (1973).  As discussed, supra, under this framework the plaintiff

must satisfy the initial burden under the statute by establishing a prima

facie case of intentional discrimination.  Smith v. Lockheed-Martin

Corporation, 2011 WL 2567777, *2 (11th Cir. 2011).  For claims of racial

discrimination, the plaintiff must show that (1) she is a member of a

protected class (here, Caucasian); (2) she was qualified for the position she

held; (3) she suffered an adverse employment action; and (4) her employer

treated her less favorably than similarly situated individuals outside of her

protected class.  Alvarez v. Royal Atlantic Developers, Inc., 610 F.3d 1253,

1264 (11th Cir. 2010).  With respect to this last showing, "the individuals

must be similarly situated in all relevant respects besides race, since

different treatment of dissimilarly situated persons does not violate civil

rights laws." Jackson v. BellSouth Telecommunications, 372 F.3d 1250, 1273-1274 (11th Cir. 2004) (internal citations and quotation omitted).  For claims of age discrimination with respect to failure to promote, a plaintiff must show that she was (1) a member of the protected age group, (2) was qualified for and applied for the job, (3) was rejected despite her qualifications, and (4) the position was filled with someone outside of the protected class. Zeigler v. Alabama Dept. of Human Resources, 710 F.Supp.2d 1229, 1247 (M.D. Ala. 2010); Gray v. City of Montgomery, 756 F.Supp.2d 1339, 1345 (M.D. Ala. 2010); see also Rowell v. BellSouth Corp., 433 F.3d 794, 798 (11th Cir. 2005) (citing Williams v. General Motors Corp., 656 F.2d 120 (5th Cir. Unit B 1980)).  To satisfy the last prong, the plaintiff must produce some evidence that an employer has not treated age neutrally, but has instead discriminated based upon it. Rowell at 798.  Specifically, the evidence must lead the fact-finder reasonably to conclude either that the defendant (1) consciously refused to consider retaining or relocating a plaintiff because of her age, or (2) regarded age as a negative factor in such consideration." Id.

If the plaintiff is successful in proving a prima facie case, then a presumption of discrimination is raised and the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for its employment action. Smith, 2011 WL 2567777 at *2.  If the defendant meets this burden, then the presumption of discrimination is rebutted and

disappears. Id. The inquiry then proceeds to a "new level of specificity," whereby the plaintiff must prove by a preponderance of evidence that the defendant's reason is a mere pretext for unlawful discrimination. Id. at *3 (citations omitted). "Thus, if a jury reasonably could infer from the evidence presented that the employer's legitimate justification is pretextual, the question becomes whether the evidence, considered in the light most favorable to the plaintiff, yields the reasonable inference that the employer engaged in the alleged discrimination. Id. at *3 (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-48 (2000)).

**B.** **Prima Facie Case**

**(1) Racial Discrimination**

The defendants concede for the sake of argument that Shumate is able to establish a prima facie case of § 1981 racial discrimination with regard to the cafeteria manager positions at Edgewood, Kingston, and Clark. Doc. 42 at 20; Doc. 59 at 16. The defendants dispute Shumate's ability to establish a prima facie case of race discrimination with regard to the cafeteria manager position at the School of Discovery. (Doc. 59 at 16).

Shumate cannot establish a prima facie case of § 1981 racial discrimination with regard to the School of Discovery position because she admits that she did not apply for the manager position there. (Doc. 75 at 12). In order for a plaintiff to establish a prima facie case of racial discrimination in promotion, she must show, among other things, that "she applied for and

was qualified for an available position." See Walker v. Mortham, 158 F.3d 1177, 1192 (11th Cir. 1998).  Furthermore, the successful candidate for the School of Discovery position, Cynthia Burnett, is white.  Therefore, Shumate cannot meet the fourth element of a prima facie claim of race discrimination in promotion, which requires her to show that the employer filled the position with an employee outside of her protected class.  Id.

   Therefore, the defendants' motion for summary judgment is **GRANTED** with regard to Shumate's claim §1981 racial discrimination (Count One) as it pertains to the School of Discovery position, only.  The court's analysis of Shumate's § 1981 racial discrimination claims proceeds with regard to the Edgewood, Kingston, and Clark positions.

### (2) Age Discrimination

   The defendants concede that Shumate has established a prima facie case of age discrimination with regard to the Edgewood position, (Doc. 42 at 20), but argue that Shumate has failed to establish a prima facie case of age discrimination with regard to the Kingston, School of Discovery, and Clark positions.  Id.; Doc. 59 at 16.

   In a similar vein to the racial discrimination analysis above, the court finds that Shumate cannot establish a prima facie case of ADEA age discrimination with regard to the Clark and the School of Discovery positions because she admits that she did not apply for the manager positions there. (Doc. 75 at 12).  Therefore, she cannot satisfy the second prima facie element

of a failure to promote age discrimination claim.  Zeigler, 710 F.Supp.2d at 1247; Gray, 756 F.Supp.2d at 1345. See also Howell v. Compass Group, 448 Fed. Appx. 30, 34 (11th Cir. 2011); see also Bonham v. Regions Mortg., Inc., 129 F.Supp.2d 1315, 1324 (M.D. Ala. 2001).

It is worthwhile to note that a plaintiff's failure to apply for a position does not automatically defeat a claim of age discrimination.  If a plaintiff proves that she "would have applied for [a] job had it not been for [the employer's discriminatory] practices ... [then] the non-applicant is in a position analogous to that of an applicant." International Brotherhood of Teamsters v. United States, 431 U.S. 324, 368 (1977).  Here, Shumate attempts to argue that the defendants concealed the School of Discovery and Clark Elementary positions from her in order to prevent her from applying. (Doc. 75 at 20).  However, as discussed with regard to Shumate's retaliation claim, supra, the court finds that her allegation is without evidentiary support.

Thus, the defendants' motion for summary judgment is **GRANTED** with regard to Shumate's age discrimination claim (Count Three) as it pertains to the School of Discovery and Clark positions.

With regard to Shumate's age discrimination claim as it pertains to the Kingston position, the only objection that the defendants raised as to Shumate's prima facie case was their assertion that the successful candidate, Sharon Dower, was over 40 years old.  (Doc. 42 at 20).  Thus, the defendants

contend that Shumate cannot not establish the fourth <u>prima</u> <u>facie</u> element, i.e., that the position was filled with someone outside of the protected class. However, Shumate correctly argues that meeting this fourth element is not as simple as pointing to a successful applicant who was over the age of 40 when she was hired.  (Doc. 75 at 15) (<u>citing</u> <u>O'Connor v. Consolidated Coin Caterers</u>, 517 U.S. 308, 312-13 (1996)).  Rather, the court must look to whether the successful applicant was "substantially younger" than the plaintiff.  <u>Damon v. Fleming Supermarkets of Florida</u>, 196 F.3d 1354, 1359-60 (11th Cir. 1999).  In <u>Damon</u>, the Eleventh Circuit held that an age difference of three years between a terminated plaintiff and his replacement was sufficient to establish a <u>prima</u> <u>facie</u> case.  <u>Id.</u>  Here, the undisputed facts show that Shumate was 12 years older than Dower.  (Doc. 75 at 15).[3] Therefore, the court finds that Shumate can establish the fourth <u>prima</u> <u>facie</u> element of an age discrimination claim because a finding that Dower was over 40 years old when she was hired for the Kingston position does not preclude a finding that she was "substantially younger" than Shumate, <u>see</u> <u>Damon</u>, <u>supra</u>, and therefore does not preclude a finding that age was a motivating factor in the Board's decision not to hire Shumate for the Kingston position.

[3] Shumate cites Dower's deposition testimony (Doc. 64-6 at 3-4), in which she recited her date of birth.  That information was redacted from the court's copy of the deposition transcript.  However, because the defendants have not disputed Shumate's contention that she is 12 years older than Dower, the court treats this as an issue of fact to be resolved in Shumate's favor.

Thus, the following discrimination claims remain for analysis pursuant to the McDonnell Douglas framework: Shumate's Title VII and § 1981 racial discrimination claims relating to Edgewood, Kingston, and Clark (Count One); and Shumate's ADEA age discrimination claim relating to Edgewood and Kingston (Count Three).

### C.      Defendants' Proffered Legitimate Reasons

With Shumate having established a prima facie case of discrimination regarding some of the disputed promotions, the court now turns to the Board's legitimate, non-discriminatory reasons for the adverse employment decision.  An employer has an "exceedingly light burden" in setting forth legitimate, non-discriminatory reasons for termination. Perryman., 698 F.2d at 1142.  With regard to Shumate's racial discrimination claims, the Board proffers the following reasons:

### (1) Edgewood Elementary (2009)

The Board contends that it hired Wanda Smith rather than Shumate for the Edgewood position because Smith was "positive and enthusiastic during the interview," and "responded quickly, confidently, and correctly to questions about making positive changes at Edgewood." (Doc. 42 at 6) (citing Doc. 41-4 at 29; Doc. 41-3 at 16).  Shumate, on the other hand, seemed "nervous" and "unsure of her answers," and in some cases, did not answer questions correctly.  (Doc. 41-4 at 27-30).

### (2) Kingston Elementary and Clark Elementary (2011)

As stated above with regard to Shumate's retaliation claim, the Board contends that it did not hire Shumate for the Kingston position because the successful candidate, Sharon Dower, was more qualified.  (Doc. 42 at 10). The Board also asserts that Dower already acted as the substitute cafeteria manager at another school, knew how to run the computerized cash register, and was familiar with the other responsibilities of the job.  (Doc. 42 at 10) (citing Doc. 41-2 at 33).  The Board contends that it did not hire Shumate for the Clark cafeteria manager position because the successful candidate, Michael Steele, was already "successfully" serving as the interim manager at Clark and performed better in his interview than Shumate did.  See Doc. 59 at 4-5.  Panel member Aubry Larkin testified that Steele demonstrated his knowledge of the requisite procedures and laws, that he had a good demeanor with the students, and discussed his service as the interim manager.  (Doc. 64-9 at 10-11).  The Board claims that Shumate, by contrast, did not perform well in her interview, providing "pretty fair" answers to questions about her qualifications and willingness to implement needed changes, and confusing some panel members by repeatedly stating that "it's time, it's just time."  Id. at 11 (citing Doc. 64-7 at 7 and Doc. 41-11 at 6).  Finally, the Board argues that Shumate "ha[d] a history of having problems getting along with others often [sic] causing commotions [sic] and confusion."  (Doc. 41-11 at 5).

Kirkpatrick testified that, on occasion, she had to intervene and resolve problems created by Shumate.  Id.; see also Doc. 41-2 at 51-53.

### (3) Analysis

Shumate argues that the Board's proffered reasons are "so inherently weak that it has not dispelled the presumptions of discrimination," and that therefore, she is not obligated to respond pursuant to the McDonnell Douglas framework.  (Doc. 75 at 27).  She also claims that, because the Board's proffered reasons are subjective, the Eleventh Circuit's decision in Chapman v. AI Transport requires this court to use "heightened or stricter scrutiny in analyzing the [Board]'s reasons in light of any evidence of pretext."  Id. (citing Chapman v. AI Transport, 229 F.3d 1012, 1045 (11th Cir. 2000)).  The court disagrees with Shumate's analysis in no small part because the "heightened scrutiny" standard which she would have the court apply is taken from the dissent and not from the majority opinion in Chapman.[4]  Secondly, even if the cited portion of Chapman did require heightened scrutiny, it would be in the context of the court's pretext analysis, and would not excuse Shumate altogether from even discussing pretext.  Shumate's own brief states as much.  (Doc. 75 at 27) ("If the Court disagrees, then Shumate would argue

---

[4] Shumate repeatedly cites portions of Chapman as "concurring in part and dissenting in part."  See Doc. 75 at 27, n.13; 32, n. 15; 34, n. 16, and at 39.  However, Judge Birch made clear that his concurrence was limited "as to the appeal on the ADA trial verdict and on the award of costs," and not as to the court's summary judgment analysis.  Chapman, 229 F.3d at 1040.  Rather, the remainder of his opinion was in dissent, including all of the portions cited by Shumate.  These portions provide persuasive support only.

further that precedent requires the Court to use heightened or stricter scrutiny in analyzing the System's reason in light of any evidence of pretext.") (emphasis added).

The Board's reasons for not hiring Shumate for the Edgewood, Kingston, and Clark positions are perfectly legitimate and non-discriminatory.  Therefore, any presumption of discrimination is rebutted, and thus disappears.  Smith v. Lockheed-Martin Corporation, 644 F.3d at 1325-26.  The inquiry now proceeds to a "new level of specificity," whereby Shumate must prove by a preponderance of evidence that the defendant's reason is a mere pretext for unlawful discrimination or retaliation.  Id. at 1326. (citations omitted).

**D.    Pretext**

As stated above with regard to retaliation, a plaintiff may demonstrate that an employer's reason is pretextual by identifying "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could find them unworthy of credence." Ritchie v. Industrial Steel, Inc., 426 Fed. Appx. 867, 872 (11th Cir. 2011) (citing Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997)).  However, "[a] legitimate nondiscriminatory reason proffered by the employer is not a pretext for prohibited conduct unless it is shown that the reason was false and that the real reason was impermissible retaliation or discrimination." Worley v. City

of Lilburn, 408 Fed. Appx. 248, 251 (11th Cir. 2011) (citing St. Mary's Honor

Center v. Hicks, 509 U.S. 502, 515 (1993)).  If the proffered reason is one that

might motivate a reasonable employer, a plaintiff cannot merely recast the

reason, but must meet it "head on and rebut it."  Chapman v. AI Transport,

229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).

### (1) Shifting Reasons

Shumate first argues that the Board has presented "shifting reasons"

for not promoting her, and claims that this undermines its credibility.  (Doc.

75 at 29).  Shumate bases this argument on Cleveland v. Home Shopping

Network, 369 F.3d 1189, 1194-95 (11th Cir. 2004), in which the Eleventh

Circuit held that a broadcaster-employer's "shifting reasons" for why its on-

air talent was prohibited from doing "infomercials" allowed the jury to infer

that the real reason for the plaintiff's termination was discrimination or

retaliation, and not her violation of the employer's policy against

infomercials.  However, the Cleveland court found that the defendant's

"shifting reasons" were inconsistent, and found that the plaintiff handily

rebutted them with extrinsic evidence.  Cleveland, 369 F.3d at 1192.  Here,

by contrast, the reasons cited by the Board are not necessarily inconsistent –

the Board could have found that each of the successful candidates had a

better interview than Shumate, and at the same time found that the

successful candidate's experience or personality was preferable.  While it

remains to be seen, infra, whether Shumate has presented evidence to rebut

these proffered reasons, the court finds no apparent lack of credibility on the part of the defendants merely because more than one non-retaliatory reason has been proffered.  To the contrary, the Eleventh Circuit has held that the existence of a possible additional non-discriminatory basis for an employee's termination does not necessarily prove pretext.  Tidwell v. Carter Products, 135 F.3d 1422, 1428 (11th Cir. 1998); see also Zaben v. Air Products & Chem., Inc., 129 F.3d 1453, 1458-59 (11th Cir. 1997) ("Although the company gave differing explanations for the selection of employees to be discharged, saying on the one hand that seniority played no role in the process and that only an employee's performance was considered while, on the other hand, asserting that [the employee] was discharged because he had the least seniority, its reasons are not … necessarily inconsistent.").

### (2)   Shumate's Personality and Interview Performance

Shumate cites her own affidavit as extrinsic evidence of her personality and good interview performance, asserting that "a jury could find that no credible, reasonable decisionmaker would have hired other candidates over Shumate."  (Doc. 75 at 34) (citing Brooks v. County Commission of Jefferson City, Ala., 446 F.3d 1160, 1163 (11th Cir. 2006). Shumate asserts that she "was friendly during her interviews," and that she "interviewed well in 2009 and 2011."[5]  Id.  Shumate claims that she "did not

---

[5] The court disregards Shumate's citation to paragraph 11 of Janice Roseberry's affidavit because it consists of inadmissible hearsay.  See Doc. 64-2 at .

demonstrate personality problems in [her] interviews;" that she is "not difficult to get along with;" and that she "did not struggle to answer questions and … gave clear answers." Id.  Shumate also asserts that she is "competent at handling money in the cafeteria," and that she is "computer literate enough to handle my current job and the cafeteria manager job." Id.

This testimony holds little probative value because it is larded with conclusory, subjective statements based upon Shumate's personal belief. See Doc. 75 at 35 (citing Doc. 64-1 and Doc. 64-2). The Eleventh Circuit has consistently held that a party's conclusory allegations, without more, are insufficient to enable the non-moving party to withstand summary judgment. E.g., Holifield v. Reno, 115 F.3d 1555 (11th Cir.1997); Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir.1990) (conclusory, self-serving, or uncorroborated allegations in affidavit could not create issue of fact sufficient to defeat well supported summary judgment). See also Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value.") (citation omitted).

In reaching this conclusion, the court is mindful of the Eleventh Circuit's recent opinion in Felciano v. City of Miami Beach, ___ F.3d ___, 2013 WL 425445 (Feb. 5, 2013), in which the district court was held to have improperly discounted the plaintiff's sworn statements as conclusory and self-serving. Id. at *4.  In Feliciano, the district court held that police officers had

arguable probable cause when they entered the plaintiff's apartment without a warrant because the "effectively undisputed evidence" showed that they smelled marijuana coming from the apartment and saw the plaintiff's domestic partner smoking a joint as he walked out of the bedroom.  Id.  The plaintiff adamantly disputed the officers' testimony at her deposition and in a sworn declaration.  Id.  The district court noted disapprovingly that the plaintiff's "bare assertions" were insufficient to create a genuine issue of material fact because they were "conclusory" and unsupported by objective evidence.  Id.  The Eleventh Circuit disagreed, holding that the plaintiff's assertions were not conclusory, but rather were "non-conclusory descriptions of specific, discrete facts of the who, what, when, and where variety."  Id. at *6.

　　The same cannot be said of Shumate's affidavit regarding her interview performance, which is far more subjective than the Feliciano plaintiff's testimony.  Shumate's affidavit does not address the "who, what, when, and where" of her interview.  Instead, it merely constitutes Shumate's self-assessment of her performance and personality, offered to the court for the purpose of establishing that "no credible, reasonable decisionmaker would have hired other candidates over Shumate."  Doc. 75 at 34.  In short, Shumate's own opinion regarding her interview performance and personality, standing alone, is insufficient enable her to withstand summary judgment as the nonmoving party.

Shumate is on more solid ground, however, when she points to the deposition testimony of 2011 interview panel members Sabrina Scott, Patricia Hildreth, and Charlie Nevels, whose testimony somewhat contradicts the defendants' characterization of Shumate as having a difficult personality and a poor interview.[6] [7] (Doc. 75 at 36).  Scott previously worked with Shumate in a summer program, and testified that she was easy to work with and pleasant to be around.  (Doc. 41-7 at 19).  Hildreth stated that the criteria she sought in a cafeteria manager candidate was "a pleasing personality" and an ability "to get along with workers as well as staff," and that Shumate met these criteria.  (Doc. 64-7 at 13).  Nevels testified that each of the candidates interviewing in 2011 "did about the same."  (Doc. 65-5 at 5). However, when asked, based upon Shumate's interview, whether he thought she could have performed the job of cafeteria manager, Nevels answered that "I don't know her, her work ethics, I've never worked with her, so I couldn't make that assumption just on the questions that was [sic] asked."  (Doc. 65-1 at 8).  Kirkpatrick's testimony on this point is also mixed.  She testified that her working relationship with Shumate was "pretty good," yet qualified this

---

[6] Gerald Shirley's testimony that Shumate's personality was "pleasant" is of limited relevance because Shumate did not identify Shirley in her brief – the court has no idea who he is or what connection he has to the case.  See Doc. 75 at 36; Doc. 65-5.
[7] The court disregards Shumate's citation to paragraph 14 of Janice Roseberry's affidavit, because it consists of inadmissible hearsay.  See Doc. 64-2 at 9.

comment by also stating that Shumate was "kind of hard to get along with, you know, as far as the workers, more so than with me." (Doc. 64-8 at 6, 11).

The testimony of Scott, Hildreth and Nevels is sufficient to raise a question of fact regarding two of the defendants' proffered reasons with regard to the Kingston and Clark positions, i.e., that Shumate's personality and poor interview performance in 2011 were among the reasons that she was not promoted. This testimony does not, however, address Shumate's alleged poor interview performance in 2009. Shumate has offered no other evidence of pretext regarding the Edgewood decision other than her own conclusory and subjective affidavit stating that she interviewed well in 2009 and 2011. See Doc. 64-1; see also Doc. 75 at 36-37. Accordingly, the court finds that Shumate has not proved pretext by a preponderance of the evidence with regard to the 2009 Edgewood cafeteria manager position, and finds that the defendants' summary judgment motion is due to be **GRANTED** as to Counts One and Three as they pertain to the Edgewood position. The court now turns to the defendants' remaining proffered reasons for not hiring Shumate at Kingston and Clark.

### (3)   Qualifications

Setting aside Shumate's alleged personality and poor interview performance, the defendants' remaining proffered reason for not hiring Shumate for the Kingston and Clark positions in 2011 is that Dower and Steele were better qualified. In order to prove pretext relating to her

qualifications, Shumate must "show that the disparities between the successful applicant's and her own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." Brooks, 446 F.3d at 1163 (quoting Cooper v. S.Co., 390 F.3d 695, 732 (11th Cir. 2004). Shumate does not clear this bar.  For example, she argues that Dower, the successful candidate at Kingston, had less experience working in a school cafeteria and did not have a SafeServ certificate.  (Doc. 75 at 40-41). However, in addition to her two years' experience working in Selma school cafeterias, Dower had five years' experience working in two separate bakeries and three years working in day care centers.  (Doc. 64-6 at 5).  Shumate does not address Dower's experience as an interim cafeteria manager at another Selma school, City Park.  (Doc. 41-2 at 33).  Shumate also dismisses the qualifications of Michael Steele, the successful candidate at Clark, by saying that he "had only filled in as cafeteria manager," and asserts that she was "at least as familiar as Steele … with regard to cafeteria operations."  (Doc. 75 at 41).  Neither argument suggests particularly noteworthy disparities between Shumate's and the successful applicants' qualifications, and certainly not disparities that are of such weight or significance that no reasonable person could have chosen Steele or Dower over Shumate.

At best, the facts above may indicate that the interview panel was wrong when it concluded that Dower and Steele were better candidates.  But

a mistake in fact does not show pretext.  See Lee v. GTE Fla., Inc., 226 F.3d 1249, 1253 (11th Cir.2000) (providing that "[a] plaintiff must show not merely that the defendant's employment decisions were mistaken, but that they were in fact motivated by [the protected characteristic]"); Alexander v. Fulton County, Ga., 207 F.3d 1303, 1339 (11th Cir.2000) (holding that "[a] plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race.") overruled on other grounds, Manders v. Lee, 338 F.3d 1304 (11th Cir. 2003).  Federal courts are not in the business of  judging whether employment decisions are prudent or fair. Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999).  Rather, the court's sole concern is whether unlawful discriminatory animus motivates a challenged employment decision. Id. (citing Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984)).

### (4)  Kirkpatrick's Alleged Testimony About Race

Shumate points to the following portion of Kirkpatrick's testimony as an admission that race was a factor in the Board's hiring decision:

> And you know, I'm probably not supposed to say this, but I'm going to say it anyway.  Hello.  Just don't pay any attention to what I'm saying.  But I even went and talked to the – what do you call it? – the principal, to make sure it was okay with him whoever we got, in other words, she didn't have to be black or white or whatever, you know.  And he said yes, that he did not want to be on the committee, but whoever I picked was – or we picked was fine.

Doc. 64-8 at 33.  Kirkpatrick did not identify which principal she had this conversation with or when the conversation took place, although the court notes that Peterson served on the 2009 interview panel for the Edgewood position, whereas the principal who Kirkpatrick spoke with stated that he did not want to be on "the committee."  Id.  Regardless, Shumate argues that Kirkpatrick would never have considered asking a principal this question if she was certain that the Board's principals would not care about a candidate's race.  Id.  Although this is a valid rhetorical point, the fact remains that the principal referred to by Kirkpatrick confirmed that race was not a factor as far as he was concerned.  Furthermore, Kirkpatrick also testified that none of the school system's principals ever indicated to her that they were concerned with the race of the cafeteria manager candidates, and testified that she never felt pressure from the superintendent or anyone else to hire people of a particular race.  Id.  These facts do not evidence an admission by Kirkpatrick that race was a factor, and certainly do not even suggest that either interview panel was "improperly infected with retaliatory animus."  See Doc. 75 at 44.

Accordingly, the court finds that Shumate cannot survive summary judgment on her race and age discrimination claims because Shumate has failed to establish by a preponderance of evidence that the Board's proffered reasons are a pretext for unlawful discrimination.  Therefore, the defendants' summary judgment motion is **GRANTED** with regard to Shumate's Title

39

VII, § 1981 and ADEA race and age discrimination claims as they pertain to the Kingston and Clark positions (Counts One and Three).

## IV. STATE LAW CLAIMS

Shumate makes three state law claims against the defendants, including claims for (1) age discrimination and harassment pursuant to the Alabama Age Discrimination in Employment Act of 1997, Ala. Code § 25-1-20, et. seq., (2) intentional infliction of emotional distress, and (3) negligent and wanton hiring, training, supervision, and retention.[8] See Doc. 51 at 9-14.

### A. CLAIMS AGAINST THE BOARD

The defendants argue that the Board is absolutely immune from liability as a matter of law for any state law claims brought against it. (Doc. 42 at 29). Pointing to the fact that the defendants did not plead absolute immunity as an affirmative defense in any of their three answers, Shumate appears to argue that the defendants have somehow waived state immunity as a defense. (Doc. 75 at 48). This is incorrect. Section 14, Ala. Const.1901, provides "[t]hat the State of Alabama shall never be made a defendant in any court of law or equity." Haley v. Barbour County, 885 So.2d 783, 788 (Ala.2004) (quotation omitted). This affords the State and its agencies an "absolute" immunity from suit in any court. Id. (quoting Ex parte Mobile County Dep't of Human Res., 815 So.2d 527, 530 (Ala. 2001) (stating that Ala. Const.1901, § 14, confers on the State of Alabama and its agencies absolute

---

[8] Shumate has withdrawn her hostile work environment claim. (Doc. 75 at 14 n. 3).

immunity from suit in any court); Ex parte Tuscaloosa County, 796 So.2d 1100, 1103 (Ala.2000) ("Under Ala. Const. of 1901, § 14, the State of Alabama has absolute immunity from lawsuits. This absolute immunity extends to arms or agencies of the state ....")). "Indeed, the Alabama Supreme Court has described § 14 as an 'almost invincible' 'wall' of immunity." Haley, 885 So.2d at 788 (quoting Alabama State Docks v. Saxon, 631 So.2d 943, 946 (Ala.1994)). This "wall of immunity" is "nearly impregnable," Patterson v. Gladwin Corp., 835 So.2d 137, 142 (Ala.2002), and bars "almost every conceivable type of suit." Hutchinson v. Board of Trustees of Univ. of Ala., 288 Ala. 20, 23, 256 So.2d 281, 283 (1971). Moreover, if an action is an action against the State within the meaning of § 14, such a case "presents a question of subject-matter jurisdiction, which cannot be waived or conferred by consent." Patterson, 835 So.2d at 142-43."

It is also clear that the Board is an arm of the state. In Enterprise City Board of Education v. Miller, 348 So.2d 782 (Ala. 1977), the Alabama Supreme Court held that city boards of education were immune from civil actions:

> City boards of education are authorized by the legislature. Title 52, Section 148, et seq. [now § 16–11–1 et seq., Ala Code 1975]. "Like county school boards, they are agencies of the state, empowered to administer public education within the cities. As such, a city school board is not a subdivision or agency of the municipal government. Opinion of the Justices, 276 Ala. 239, 160 So.2d 648 (1964). A city school board's relation to the city is analogous to a county school board's relation to the county. State v. Brandon, 244 Ala. 62, 12 So.2d 319 (1943).

Accordingly, the court finds that summary judgment is **GRANTED** with regard to all of Shumate's state law claims against the Board.

### B.  STATE LAW CLAIMS AGAINST PETERSON

### (1)  AGE DISCRIMINATION CLAIM[9]

In addition to stating claims of age discrimination pursuant to the federal ADEA, Count Four of Shumate's amended complaint states claims pursuant to the AADEA.  (Doc. 51 at 10-11).  The AADEA, states that "the remedies, defenses, and statutes of limitations under this article shall be the same as those authorized by the [ADEA] except that a plaintiff shall not be required to pursue any administrative action or remedy prior to filing suit under this article." Ala.Code § 25–1–29.

The same order and allocation of proof in cases under Title VII govern suits under the ADEA. Bonham v. Regions Mortgage, Inc., 129 F.Supp.2d 1315, 1321 (M.D.Ala.2001); see also Chapman, 229 F.3d at 1024.  And "[b]ecause it is self-evident that the AADEA's purpose and prohibition are like the ADEA's, to promote employment of older persons based on their ability rather than age and to prohibit arbitrary age discrimination in employment, it follows that [the ADEA's] principles should govern in AADEA cases as well." Bonham, 129 F.Supp.2d 1315, 1321 (M.D. Ala. 2001).  Thus,

---

[9] Shumate asserts that, for her state law claims and arguments, "the Court must include the evidence of the System's spoliation and resolve it in Shumate's favor."  Id.  But the court has already ruled against Shumate regarding her allegations of spoliation and has denied her motion for imposition of spoliation sanctions.  (Doc. 79).

the same order and allocation of proof in cases under Title VII govern suits under the AADEA.  Bonham, 129 F.Supp.2d at 1321; Dooley v. AutoNation USA Corp., 218 F.Supp.2d 1270 (N.D.Ala.2002).

The court has found, supra, that the defendants' summary judgment motion is due to be granted in part with regard to Shumate's ADEA discrimination claims (Counts One and Three).  Because the same order and allocation of proof applies to Shumate's AADEA claims, the court finds that the defendants' summary judgment motion is due to be **GRANTED** with regard to Count Four as well.

### C.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Shumate's claim for intentional infliction of emotional distress is really a claim for outrage.  Wal-Mart Stores, Inc. v. Smitherman, 872 So.2d 833, 836 (Ala. 2003) (indicating in passing that claim for intentional infliction of emotional distress is really a claim for tort of outrage).

While Alabama courts do recognize the tort of outrage, they have consistently deemed it a "very limited cause of action that is available only in the most egregious circumstances." Thomas v. BSE Indus. Contractors, Inc., 624 So.2d 1041, 1044 (Ala.1993) (noting that the Alabama Supreme Court "has held in a large majority of the outrage cases reviewed that no jury question was presented").  Under current Alabama law, a plaintiff cannot prevail on an outrage claim unless she establishes that the defendant's conduct: "(1) was intentional or reckless; (2) was extreme and outrageous;

and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." Harrelson v. R.J., 882 So.2d 317, 322 (quoting Thomas, 624 So.2d at 1043).

Shumate alleges that Peterson was the primary source of complaints about Shumate's personality, Doc. 75 at 36, and that he "appeared to inject these experiences with Shumate from outside the interview panel into the [2009] panel's decision. Id. Shumate also claims that "a jury could find that Peterson had pre-existing racial animus or prejudice against Shumate," and that he "tried to have a white cafeteria manager fired because she would not give him a key to the cafeteria." (Doc. 75 at 42 n. 25).

Setting aside this mélange of hearsay and conjecture and accepting it as true, the court still does not find that Peterson's conduct rose to the level at which Alabama state courts have allowed recovery for the tort of outrage, i.e., cases involving misconduct in a burial, sexual harassment or assault, or barbaric methods of coercing an insurance settlement. See Potts v. Hayes, 771 So.2d 462, 465 (Ala. 2000); see also Harrelson v. R.J., supra; and Travelers Indemnity Co. of Illinois v. Griner, 809 So.2d 808 (Ala. 2001). Peterson's conduct, as alleged by Shumate, was not nearly "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." American Road Serv. Co. v. Inmon, 394 So.2d 361, 368 (Ala. 1980) (quotations omitted).

Although Shumate argues that "[h]er state law outrage claim cannot be dismissed as a matter of law," the court disagrees with this conclusion because the facts alleged here are distinguishable from the facts of the case law that Shumate cited for support.  In Lees v. Sea Breeze Health Center, 391 F.Supp.2d 1103, 1107-08 (S.D. Ala. 2008), the court found that the plaintiff's manager "began a ten-month onslaught of harassment" and committed a "slew" of retaliatory acts, culminating in the termination of her employment, all in response to the plaintiff's having enlisted in the U.S. Air Force Reserve.  This harassment included the manager's throwing plaintiff's orders in her face, and continually berating the plaintiff as "inconsiderate and selfish for joining the service."  Id. at 1104-05 (quotations omitted).  The facts alleged by Shumate, supra, simply are not comparable in severity or scope.  Furthermore, Peterson is not alleged to have terminated Shumate's employment.

In Rice v. United Ins. Co. of America, 465 So.2d 1100, 1102 (Ala. 1984), the Alabama Supreme Court reversed a trial court's dismissal of the plaintiff's claim based upon the Alabama Rule of Civil Procedure 12(b)(6) standard and not the summary judgment standard, saying only that it was "conceivable" under the facts alleged that the plaintiff could prove a set of facts in support of her claim of outrage.  Finally, in Cunningham v. Dabbs, 703 So.2d 979, 983 (Ala. Civ. App. 1997), the defendant stood accused of blatant sexual harassment, including repeatedly making lewd and graphic

sexual comments to the plaintiff, making unwanted physical contact, and firing the plaintiff on the spot upon learning that she was engaged to be married.  Id. at 980-81.  These facts clearly fit into the limited categories enumerated in Potts.  The facts alleged by Shumate do not.

Accordingly, the defendant's motion for summary judgment is **GRANTED** with regard to Count Five of Shumate's complaint.

### D.  NEGLIGENT/WANTON HIRING, TRAINING, SUPERVISION AND RETENTION

The defendants argue that the facts before the court do not broach those necessary "to even indicate" a negligence or wantonness claim.  (Doc. 42 at 30).  Shumate complains that this is an insubstantial "mud at the wall" argument, and asserts that "[a] jury could find in Shumate's favor on this claim based on her showing that Peterson and other employees were callous to discrimination and retaliation."  (Doc. 75 at 49).

Setting aside the nebulous term "callous to discrimination and retaliation," which makes Peterson sounds like a bystander and not an actor, and assuming for arguments' sake that Shumate could prove some underlying tort committed against her by Peterson, the tort of negligent hiring, training, supervision, and retention is a claim made against an employer for acts performed by an employee.  See Jones Expr., Inc. v. Jackson, 86 So.3d 298, 304 (Ala. 2010) (citing University Fed. Credit Union v. Grayson, 878 So.2d 280, 291 (Ala.2003) ("[A] party alleging negligent supervision and hiring must prove the underlying wrongful conduct of the

46

defendant's agents.")).  Peterson is not alleged to be an employer -- rather, the Board is.  (Doc. 51 at 2, ¶ 2).  The Board has been found to enjoy absolute immunity from all of Shumate's state law claims.  <u>See</u> <u>supra</u>.  Thus, as a matter of law, Shumate's claim for negligent hiring, training, supervision, and retention must fail.

Accordingly, the defendant's motion for summary judgment is **GRANTED** with regard to Count Six of Shumate's complaint.


## V. CONCLUSION

For the reasons explained above, the defendants' summary judgment motion is hereby **GRANTED**, as follows:

- Count One (Title VII and § 1981 racial discrimination) with regard to all four positions (Edgewood Elementary, Kingston Elementary, Clark Elementary, and the School of Discovery).

- Counts Two and Seven (Title VII and § 1981 Retaliation) with regard to Edgewood Elementary, the School of Discovery, and Clark Elementary.

- Count Three (ADEA) with regard to all four positions (Edgewood Elementary, Kingston Elementary, Clark Elementary, and the School of Discovery).

- Count Four (AADEA) with regard to all four positions (Edgewood Elementary, Kingston Elementary, Clark Elementary, and the School of Discovery).

- Count Five (Outrage/Intentional Infliction of Emotional Distress) with regard to all four positions (Edgewood Elementary, Kingston Elementary, Clark Elementary, and the School of Discovery).

- Count Six (Negligent/Wanton Hiring, Training, Supervisions, and Retention) with regard to all four positions (Edgewood Elementary, Kingston Elementary, Clark Elementary, and the School of Discovery).

The defendants' summary judgment motion is hereby **DENIED** with regard to Counts Two and Seven (Title VII and § 1981 Retaliation) pertaining to Shumate's 2011 interview for the Kingston Elementary position.  These are the only two claims that will proceed to trial.

**DONE** and **ORDERED** this 4th day of March 2013.

/s/ Callie V. S. Granade  
**UNITED STATES DISTRICT JUDGE**